**STATE, Plaintiff-Appellee, v. WEBSTER, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22071.   Decided May 21, 1951.

B. J. Conway, Pros. Atty., Vatro J. Grill, Asst. Pros. Atty., Cleveland, for plaintiff-appellee.

Martin & Martin, Cleveland, for defendant-appellee.

## OPINION

By THOMPSON, J:

This case comes into this court on an appeal on law by the defendant-appellant from the judgment of the Municipal Court of Cleveland, sentencing him to pay a fine of $500.00 and costs, pursuant to a jury verdict finding him guilty of practice of medicine without a license.

Warrant was issued against the defendant in this case, based upon an affidavit filed by an inspector for the State Medical Board charging the following violation of law:

"* * * that on or about the 6th day of April, A. D. 1950, at the City of Cleveland in said County of Cuyahoga, one

Franklin D. Webster, alias Franklyn D. Webster, did unlawfully practice medicine and surgery at 5005 Euclid Avenue, before the said Franklin D. Webster, alias Franklyn D. Webster, had obtained a certificate to practice medicine and surgery or any of its branches from the State Medical Board of Ohio, in the manner required by law, except a certificate to practice chiropractic and mechanotherapy which does not permit the use of drugs, in this, to-wit: the said Frank D. Webster, alias Franklyn D. Webster, did then and there prescribe, advise, recommend and dispense, for a fee, to-wit, the sum of $25.00, certain drugs, the nature of which are pills, powders and fluids and labelled as follows: No. 52 Estrogen, No. 5 Vegetable tablets, No. 40 Vitamin B-1-Ox bile extract, No. 42 Ortho-Phosphoric acid, No. B81, Vegetable tablets, No. 41 Glycerine solution, No. 91 and sulphur fumes for the bodily infirmities and diseases of Mrs. Carl Kaufman, to-wit, arthritis, excessive systemic content of aluminum, arsenic and strychnine, improper functioning of kidney and further deponent says not; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Ohio."

Defendant pleaded not guilty and subsequently, after demurrer filed and overruled, and after motion for bill of particulars was denied, trial to the jury was had.

The evidence at the trial showed that defendant has possessed a license to practice chiropractic and mechano-therapy since 1916 and that his license is on file with the Probate Court of Cuyahoga County but no license to practice medicine was ever granted to him. The testimony further shows that one Mrs. Kaufman having an arthritic condition lasting for eighteen years and being referred to defendant, consulted him at his office on March 28, 1950, where x-rays were taken, a diagnostic machine employed and instrument readings taken. The patient returned two days later to receive the defendant's analysis of her condition. She came back a third time with a representative of the Better Business Bureau whom she introduced as her husband. This representative asked the defendant to go through his previous examination and demonstrate the diagnostic machine. At this third consultation, the patient received from defendant State's Exhibits 4 through 10, consisting of seven bottles of pills and written instructions as to when and how many she was to take. The patient some days later received by mail a bill for $25.00 from the defendant, which she failed to pay.

A chemist in the food and drug division of the City of Cleveland identified the contents of the bottles as follows:

Glycerine solution of iodine and vegetable extractions (State's Ex. 4) mixture of thiamine hydrochloride or Vitamin B-1, or ox-bile (State's Ex. 5); Estrogen preparation (State's Ex. 6); phosphoric acid, corn starch, acacia and possibly phytin (State's Ex. 7); non-specific volatile oils, tannin, gallic and malic acids, resins and mucilages (State's Ex. 8); complex pulverized mixture of vegetable substances, specifically identified as starch granules of arrow root or variety and a mucilagious gum identical to that found in psyllium seed, (State's Ex. 9); complex pulverized mixture of vegetable substances (State's Ex. 10).

The defendant took the stand and testified to Mrs. Kaufman's visits to his office and admitted delivery of the bottles to Mrs. Kaufman but he insisted the contents were "food supplements" given for the purpose of building up nutritional deficiencies and to ready her for subsequent body treatments.

State's Exhibit 6, one of the bottles marked "45 tablets Estrogen Seroyal Brands" has a label declaring "Directions: To be dispensed only by or on the prescription of a physician." After the finding of guilty by the jury and entry of judgment against defendant, the defendant-appellant filed thirteen assignments of error in this court, but his brief concerns itself primarily with three principal claims:

1. That the affidavit was fatally defective and failed to state an offense;

2. That the State failed to prove the charge;

3. That §12694 GC is inapplicable to one holding a license for the practice of limited branches of medicine or surgery.

With reference to the first claim we call attention to the statutes involved in this case. These include §§12694, 1274-1 through 7, GC, and §1286 GC. The pertinent provisions of §12694 GC are as follows:

"Whoever practices medicine or surgery, or any of its branches, before obtaining a certificate from the state medical board, in the manner required by law . . . . shall, for the first offense be fined not less than $25.00 nor more than $500.00 . . . ."

By §1274-1 GC, the State Medical Board shall

"examine and register persons desiring to practice any limited branch or branches of medicine and surgery and shall establish rules and regulations governing such limited practice. Such limited branches of medicine or surgery shall include . . . . chiropractic . . . . mechano-therapy . . . ."

Sec. 1274-3 GC describes the method of conducting examinations for particular limited branches of medicine and surgery and then declares:

"If the applicant passes such examination and has paid the fee of twenty-five dollars as required by law, the state medical board shall issue its certificate to that effect. Such certificate shall authorize the holder thereof to practice such limited branch or branches of medicine or surgery as may be specified therein, but shall not permit him to practice any other branch or branches of medicine or surgery, nor shall permit him to treat infections, contagious or venereal diseases, nor to prescribe or administer drugs, or to perform major surgery, except that the state medical board may adopt rules and regulations permitting in the practice of chiropody the use of such drugs as are necessary to such practice."

Sec. 1286 GC is important as defining what constitutes the practice of medicine and surgery. This section declares:

"A person may be regarded as practicing medicine, surgery, or midwifery, within the meaning of this chapter, who uses the words or letters, 'Dr.,' 'Doctor,' 'Professor,' 'M. D.,' 'M. B.,' or any other title in connection with his name which in any way represents him as engaged in the practice of medicine, surgery or midwifery, in any of its branches, or who examines or diagnoses for a fee or compensation of any kind, or prescribes, advises, recommends, administers or dispenses for a fee or compensation of any kind, direct or indirect, a drug or medicine, appliance, application, operation or treatment of whatever nature for the cure or relief of a wound, fracture or bodily injury, infirmity or disease. The use of any such words, letters or titles in such connection or under such circumstances as to induce the belief that the person who uses them is engaged in the practice of medicine, surgery or midwifery shall be prima facie evidence of the intent of such person to represent himself as engaged in the practice of medicine, surgery or midwifery."

Having these sections in mind, and also the provisions of §§13437-1 through 13437-34 GC, pertaining to the sufficiency of indictments and informations, we may note the language of the affidavit in this case directly charging the offense, i. e., that defendant "did prescribe, advise, recommend and dispense for a fee to-wit, the sum of $25.00 certain drugs for the bodily infirmities and diseases of Mrs. Carl Kaufman."

The defendant in originally demurring to the affidavit, and in charging error on the part of the trial court, has urged in effect that §1286 GC, requires the intent to be alleged that any drug or medicine was prescribed or dispensed "for the cure or relief of a wound, fracture or bodily injury, infirmity or disease" in view of employment of these precise words in

the section in question. Apparently having in mind §13437-34 GC, defendant cites §13439-9 GC, providing that a defendant may demur "when the intent is not alleged and proof thereof is necessary to make out the offense charged." We recognize that whenever a particular intent constitutes an element of a crime, such intent must be substantially averred in the indictment. **21 O. Jur., "Indictment and Information" Sec. 80, p. 772.** That is the purport of the cases cited by defendant and all that is involved by §13934-9 GC. We find in the instant case that even though the precise words of the statute were not used in their entirety, the affidavit was sufficient. See: **State of Ohio v. Henning, 83 Oh Ap 445** (Second District 1948).

It is to be borne in mind that the General Assembly of Ohio has in many respects relieved criminal charges of the exactness of averment formerly necessary. **21 O. Jur., "Indictments and Information" Sec. 27, p. 707.** Suffice it to say, that we find the affidavit in this case sufficient under §§13437-4, 13437-5 and 13437-7 GC, and sufficient to apprise the defenadnt of the charges he was called upon to meet. Giving the defendant the benefit of the presumptions to which he is entitled in a criminal case, we are constrained to keep in mind the admonition that while a trial must be fair to the defendant in a criminal case, it must also be fair to the people of the State whose welfare is similarly involved. **State v. Schaefer, 96 Oh St 215, 219.**

The second claim of error strenuously urged by counsel for defendant is that there is failure of proof. We have read carefully the bill of exceptions and we find no such failure of proof as is urged upon us. Counsel for defendant refers to the uncontradicted testimony of defendant that the articles delivered to Mrs. Kaufman were nutritional supplements and nothing more. That was the defendant's defense and his testimony was uncontradicted by himself, but it was not the testimony of others and the jury disbelieved him. Nor do we incline to the interpretation of the statute suggested by able counsel for defendant that the services were not performed for a fee, an essential element of the crime under §1286 GC, for the mere reason that the bill for $25.00, sent by defendant to the patient, was never paid.

The third claim of error appears more substantial, that §12694 GC, does not apply to a chiropractic or mechanotherapist, holding a limited certificate under §1274-3 GC, and that either the sole method or at least the first method required in proceeding against such individual improperly practicing medicine is that outlined in §1274-6 GC, authorizing

the State Medical Board to revoke or suspend a limited certificate "upon proof of violation of the rules and regulations established by the Board governing such practice." Unfortunate for this contention, however, is the provision of the next following section of the General Code, §1274-7 GC, which expressly declares that "nothing in §§1274-1 to 1274-6 GC, both inclusive, shall be so construed as in any way amending §1286, 1287 and 12694 GC, or as in any way limiting the application of said sections or any other provisions of the laws of the state to practitioners of such limited branches of medicine or surgery save as hereinbefore specifically provided." In other words, the very sections of the General Code providing for the licensing of individuals engaged in the limited branch of chiropractic and mechano-therapy expressly recognize the applicability to this group of limited practitioners of other sections of the Code prohibiting general practice of medicine by those who have failed to procure a license so to do.

The judgment of the trial court is therefore affirmed. Exc. Order see journal.

SKEEL, PJ, HURD, J, concur.